No. 11-0799 – *State of West Virginia v. Timothy Ray Sutherland*

**FILED**

July 16, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Benjamin, Chief Justice, concurring, in part, and dissenting, in part:

I agree with the Majority's decision to affirm Mr. Sutherland's conviction, yet the route chosen by the Majority in reaching that conclusion is confused. First, unlike the Majority, I believe the circuit court was incorrect when it chose not to strike the juror at issue, Mr. Wong, for cause. Second, I do not understand how the Majority can support creating new law—syllabus point three in the opinion, overruling syllabus point 8 of *State v. Phillips*, 194 W. Va. 569, 461 S.E.2d 75 (1995)—in a discussion that is entirely *obiter dictum*. Third, I am concerned about the implications of the new syllabus point on the efficacy of peremptory strikes.

## I. Striking the Juror for Cause

The following exchanges show that Mr. Wong was biased and should have been struck for cause by the court:

(1)     The jury panel was asked the following question: "[Defense Counsel:] . . . Does anyone think if you intentionally murder someone, you should never leave prison?" Mr. Wong raised his hand.

(2)     Defense counsel followed up on Mr. Wong's initial response: "[Defense Counsel:] Mr. Wong, so, if you found Mr. Sutherland guilty of first degree murder, you

1

could not recommend mercy? [Mr. Wong:] No, I just feel if somebody takes a life, and since you don't have the death penalty here in West Virginia, that's where he ought to stay."

(3)     Defense counsel continued by asking a third question: "[Defense Counsel:] Is there anyone here who agrees with the saying, 'An eye for an eye and a tooth for a tooth?' Mr. Wong raised his hand.

In total, Mr. Wong responded to three questions posed by defense counsel dealing with the issue of mercy. Three times Mr. Wong indicated he would be unwilling to recommend mercy. The Majority insists that Mr. Wong did not make a "clear statement of bias," as required by *State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d 675 (2009), and that further questioning by defense counsel was needed to establish whether Mr. Wong was indeed able to impartially decide the case. How many different ways can someone say—unconditionally and unequivocally—that they would not recommend mercy?

The Majority unsuccessfully compares this case to the facts of *State v. Juntilla*, 227 W. Va. 492, 711 S.E.2d 562 (2011). The juror at issue in *Juntilla* made an initial statement that was clearly equivocated: "[T]he juror stated that it would be '*unlikely* that I would feel any mercy but I would have to, you know, I would have to hear the case through." 227 W. Va. at 499, 711 S.E.2d at 569 (emphasis added). Upon further questioning, the juror stated,

2

> *I have to, you know, hear the case.* I don't know if I could stand here and give that decision at this very time but it *would probably be unlikely* that I would feel any mercy but I would have to, you know, I would have to hear the case through.

*Id.* at 499–500, 711 S.E.2d at 569–70 (emphasis added). Again, the *Juntilla* juror's statement was equivocated.

Mr. Wong's statements were perfectly clear. He did not say, "If somebody takes a life, prison is where he should *probably* to stay." He affirmatively indicated that he believes that a person who takes a life should stay in prison, and through three questions, he never made any indication that he could be convinced otherwise. Mr. Wong made a clear expression of bias and should have been struck by the court for cause.

## II. Overruling *Phillips*

I agree with the Majority's conclusion that syllabus point 8 of *Phillips* must be overruled. The federal and West Virginia constitutions guarantee the right to an impartial jury, and that is precisely what Mr. Sutherland received. Applying *Phillips* would lead to an absurd result. Therefore, I agree that Mr. Sutherland's conviction should be affirmed; however, I am disturbed by the path the Majority took in overruling *Phillips*.

The new syllabus point announced by the Majority is in a section of the opinion included "for the sake of argument." The Court has created new law that has no

3

effect on Mr. Sutherland's conviction. This is *obiter dictum*. "It is a basic principle of American jurisprudence that a court cannot gratuitously pronounce what they envisage the law should be but must limit themselves to rulings in the context of a justiciable case or controversy." *Teller v. McCoy*, 162 W.Va. 367, 396–97, 253 S.E.2d 114, 131 (1978) (Neely, J., concurring, in part, and dissenting, in part). By creating law that does not have any effect on the case at bar, the Majority has exceeded its appellate jurisdiction as granted by Article 8, Section 14 of the Constitution of West Virginia.

Had the Majority correctly found that Mr. Wong should have been struck for cause by the circuit court, the overruling of *Phillips* would be legitimate. Instead, because the new syllabus point created in the opinion is *obiter dictum*, the validity of the new syllabus point is doubtful.

### III. Prejudice and Peremptory Strikes

I am concerned about the effect the Court's new syllabus point will have on the defendant's statutory right to peremptory strikes. Requiring a showing of prejudice may place some defendants between "a rock and a hard place": continuing to allow a biased juror to sit on the jury in hopes of success on appeal or using a peremptory strike to correct a court's error.

The Majority reasons that if a defendant does not wish to use a peremptory strike to correct a court's error, the defendant can essentially make a gamble: allow the

biased juror to sit on the case with the hopes of obtaining a reversal of the case on appeal. Unlike the Majority, I do not believe our state and federal constitutions condone or encourage gambling on a person's liberty.

I find it more likely that a defendant would choose to strike an offending juror. In practice, most defendants use all of their peremptory strikes. If a defendant wished to use all six of his strikes to eliminate jurors who would otherwise not be struck for cause, but was instead required to use one of those strikes to correct a court's error—failing to strike a juror showing clear bias—that defendant has effectively been denied a peremptory strike. In that case, the jury may contain one juror (or more) whom the defendant may have wished to strike for a perceived bias, but could not do so because of the court's error.

Peremptory strikes originated in English law and arose to prevent a biased juror from sitting on a jury:

> "[I]n criminal cases, or at least in capital ones, there is, *in favorem vitae*, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all; which is called a *peremptory challenge*: a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons.
>
> "1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is, that a prisoner (when put to defend his life) should have a

5

good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike.

"2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside."
4 Bl. Comm. 353.

*Swain v. Alabama*, 380 U.S. 202, 242–243 (1965) (Goldberg, J., dissenting), *overruled on equal protection and racial discrimination grounds by Baston v. Kentucky*, 476 U.S. 79 (1986). Historically, peremptory strikes did not exist to correct a court's errors.

The effective denial of a peremptory strike may result in a person sitting on the jury, who through his responses to questions, mannerisms, and tone, has shown bias that would not rise to requiring the court to strike that juror for cause. Nonetheless, that juror is biased, and peremptory strikes exist so that that juror can be removed from the jury. I contend that the United States and West Virginia constitutions would require reversal of a conviction obtained where such a biased juror sits on a jury if a defendant's peremptory strike has been effectively denied. However, the Majority's new syllabus point requires that prejudice be shown to warrant reversal, and it would be impossible to prove prejudice in that situation. In this way, I believe the Majority may have overcorrected the error in *Phillips*, resulting in the diminishment of the right to peremptory strikes.